The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Baylor for our next case up. First case this afternoon will be 424-1557 People v. Mejia, if that's pronounced correctly. I'll ask counsel for the appellant to please identify yourself, sir. Good afternoon, Your Honors. It's Tahirah Kameli on behalf of the appellant. Thank you. And counsel for the appellate, please identify yourself. Good afternoon, Your Honors. It's Rosario Escalera for the state. Thank you. Mr. Kameli, on behalf of the appellant, you may make your oral argument, sir. Thank you, Your Honor. Your Honors, this is a case that is going to have an impact, not just for the appellant, but a lot of other cases that may be coming in front of the district circuit courts in regards to the plea of guilty of individuals, whether it's being done voluntarily, knowingly, and intelligently. And as we all know that, Judge, that before anyone pleads guilty, they have to know about, they have to be admonished of certain criteria that has been explained in the law. By looking at this, Judge, this is one of the cases that the defendant back, the appellant in 2008, he pled guilty to one count of control substance, possession of control substance, which was a class four felony. Now, based on that, he got 24 months probation. But during the, during the pleading guilty, he was not notified about the consequences of his plea of guilty in regards to immigration, his immigration status later on in he was, he was never notified. So he was never convicted, was he? I beg your pardon? He was never convicted and the judgment was never entered, was it? That is correct. But regardless under the, under the immigration courts, the probation, the probation or supervision of 24 months, Your Honor, as it has been in this case, it has the same consequences. Anything. Bring it up to the trial court. I'm sorry? Did you ever discuss with the trial court what the federal INS regulations were that were in question here? When we filed, we notified, and that is in 21, page 21 of our exhibits, Judge, we have explicitly notified about the immigration that he applied for immigration, that in February of 2023, he was, he was notified that basically he is not qualified. So we did bring up the issue of the immigration. Yes, we did bring it up. Did you specifically tell the court what the issues were with regard to immigration? And no, we just mentioned that he was notified about the immigration. He's not qualified to apply for immigration based on the conviction that was mentioned. Yes. So in the transcript, Your Honor, it is in our motion to when we filed, it is explicitly in our motion. Yes. Page. Show me where. Oh, sure. It's 821, Your Honor. In our exhibits, page 8, it says 821, 1, 2, 3rd paragraph. It says the defendant is attached to the record. It is in the motion that we have filed in our answer, in our brief, Judge. It is brief. My question, though, is were these addressed with the trial court? Did you submit any of these regulations to the trial court? It's in defendant's motion to withdraw plea of guilty that was filed with the trial court. It is in the motion. Yes. Did you include the exhibits in the record? The exhibits, there is no records with you. Yes, Your Honor, we have. You said that there were there was exhibits. You keep talking about exhibits. I apologize. I'm talking about the appendix with your Honor appendix that we have filed. Our motion is as part of the record right now. Well, I'm trying to get back to what the trial court was confronted with. All you gave the trial court was some vague reference that it involves. It created some difficulties with his immigration status, didn't you? That's what I said. I said the defendants discovered on or about February 23rd, 2023, that his guilty plea affected his ability to apply for immigration status when he was completing his U.S. application. Yes, that's what I said. So it was brought up to the attention of the trial court that there are some issues about immigration. Was it explicitly talking about what statute? Well, he's talked about the conviction that explicitly says that the guilty plea of the conviction of that case. So that was the extent of it. Yes. Well, you're talking about immigration regulations that you've attached as an appendix, but they're not part of the record. You didn't raise those before the trial court, did you? We didn't. We did not bring up the explicit statute of any of those. All of the INS regulations you've included with your brief. None of that was before the trial court, was it? Your Honor, it was not. But the fact that the answer is no. Thank you. Yes. Now, explain to me why there was no transcript available. We reached the transcript of the 2008, Your Honor. Yeah. Yeah, we reached out to the actual, there was communication with the clerk, and the person who was transcribing was not so we couldn't able to get it. We did reach out to them. It was not available. Because the court reporter wasn't available? That is correct, Judge. I believe the court reporter, there was no document. I don't remember exactly, but our office reached out and we brought it off to the attention of the court, I believe also. In a felony case in 2006, they didn't transcribe the plea. Judge, we were not able to get the transcript. We reached out to the clerk's office. We reached out to see who the reporter was, the court reporter was, back in 2008. And yes, my office said it explicitly, Judge. Yes, it was not available. Okay. So, I have a question about that. There's a provision in the Supreme Court rule that when a transcript isn't available of courtroom proceedings, when those proceedings are an issue, on how to make a record, bystander's record, or other alternatives, so that the court on appeal, this court, can see what happened at the trial court. Did you seek to make a record of those events, pursuant to the Supreme Court rules, so this court could see? In regards to the transcript that was not available in 2008, Judge? Yes. No, I did not know. So, we don't know what the court said in 2008, do we? We don't, and that's why we attach affidavits of individuals, the interpreter, and those are provided in the record, Judge. Affidavits aren't the same thing, Counsel, as the record of the proceedings. But, Judge, when the record is not available, there was nothing I could have provided. Well, you see, I just mentioned, there's what's known as a bystander's record. Did you make any effort to create one of those on the Supreme Court rules? I am not familiar with that rule, Judge. I'm sorry. Also, Counsel, Section 214.01 has a two-year statute of limitations. Yes, Your Honor. Why doesn't that apply here? Why isn't your client years overdue before raising this issue? Judge, he brought it up when he was notified. So, the fact that he discovered in 2023, we stand by that, that it runs from the time that he discovered the issue, not from the time of the judgment. But, in regard to that, Judge, in 1401 C-5 explicitly says, at any time, may at any time file a petition. So, C-5 is explicit. The two-year doesn't apply when it comes to immigration, the federal immigration law consequences, Judge. You may continue. Go ahead. Yes, Judge. Thank you. So, in regards to 1401 C-5. Trial Court. I'm sorry. Did you raise that issue before the trial court? The 1401 issue, that's the C-5. We did not explicitly bring it up in front of the trial court. However, the case that we brought up, the immigration consequences, did we say What was your claim in the trial court? It was basically just a straight due process claim, right? It was. And it was based on the 1401 that it is after the within the two years of judgment, Judge. The C-5. Why should we consider it now? Because it was. You didn't raise this issue before the trial court. Your Honor, the 1401 was brought up. The issue of the debate explicitly filed a motion based on 1401. Only as to due process or the voluntariness of the claim. That's all you raised before the trial court. And, Judge, the C-5 explicitly talks about it as a due process issue. Wait a minute. We're starting to get into a circular argument here. You did not raise C-5 before the trial court. You raised general claims of a constitutional nature. Correct? That is correct. Plus the 1401. Right. But only in broad terms of either due process or voluntariness of the claim. Correct? That is correct. But, Judge, when we brought up the 1401, it does cover the, it should cover the B and C. It does. But did you raise it? You didn't raise the claim. That's my point. You didn't give the trial court an opportunity to look at that provision and say, oh, wait a minute. Maybe I should consider this instead. Counsel, let me follow up on Justice DeArmond's question. This court has written several times in multiple cases over many years that we're never going to reverse a trial court based upon an argument it never heard. Justice DeArmond is pointing out that this is an argument about the application of C-5 that the trial court never heard. You never raised it. You could have raised it, but you didn't. Yet here you are raising it on appeal and asking us to reverse the trial court. Why doesn't this doctrine that this court has repeatedly followed apply here? And why don't you lose for having failed to raise it in the trial court? Judge, we did not bring up the exact statute of the C-5, but we did bring up the immigration consequences. So with that, I believe that it should have been brought up. You didn't bring up the immigration consequences. You just made a broad, vague statement that he was having some difficulty with his immigration status. You didn't even say what it was. You didn't even say what it was based on. Judge, we did say that it was he realized the issue that this conviction is having consequences on his immigration application. We did say that. That's our first problem. It's not a conviction. Judge, it's not a conviction. He got 410 probation. It says very clearly that a sentence under this section shall not be considered a conviction under Illinois law unless and until the judgment is entered under subsection E of this section. It goes on to say that upon fulfillment of the terms and conditions of probation, the court shall discharge the person and dismiss the proceedings against him or her. A disposition of probation is not a sentence under this section. It is not a conviction for purposes of this act or for purposes of disqualification or disabilities imposed by law upon conviction of a crime unless and until the judgment is entered. So he never had a conviction. Under the United States rules and regulation, it is being considered as a conviction. You didn't raise that. You just said he was having some difficulties. Judge, we were not in front of the board of immigration appeals or the federal court. This is a district court. That's what I was circuits court that had only jurisdiction and wanted to get information in regards to this case. So I believe that bringing up the details about the immigration consequences of a federal statute at that level, we were just talking about judge in regards to immigration as a broad term that he was not asking to withdraw a plea and you're asking to withdraw a plea based on some sort of problem with his immigration status. But your position is all I needed to do was say he's having a problem with his immigration status. I stand by that, Judge. Yes. Okay. Yes. Do you stand by the affidavits as well? The affidavits that were provided? Yes, they were provided by third. Let's talk about that. The affidavits are captioned in the circuit court of Cook County, First Municipal Division in the name of Ramon S. Gallardo Uranga and Estefania Roa. Uranga says he's the defendant in the above captioned case, the Cook County case. He says he doesn't speak English well enough to understand without a translator and that there was none at the plate. Now the record sheet, of course, says that there was someone named E. Huaracha translating. Yes. Roa's affidavit says she was not translating for him. Although the record says that someone else, E. Huaracha, was. Roa's affidavit does not acknowledge that she's the same person. Uranga's affidavit doesn't even acknowledge that he's the defendant in this case. He doesn't reference the Ford County case and he doesn't say, oh, and by the way, my name is Mr. Majak. Neither affidavit claims that Uranga and Majak are the same person, nor do they reference any court proceedings in Ford County. So let me ask this question. Yes, and he doesn't understand English. How does he know whether the judge gave him the proper admonitions or not? Based on the, he didn't, he was never notified about the admonishment. Well, obviously, you don't have a transcript. He says he didn't speak English and he didn't understand the court and she says I didn't translate for him. So how did he know? Judge, it shows that at no time was Mr. in exhibits that the Roa says, at no time was Mr. Uranga told by the judge that his guilty plea would affect his immigration status. He says that. The Roa says that. He says she didn't talk for him. She didn't talk to him about it. And explicitly it says that, yes, but he was, she was present at the time. Roa was his affidavit, he was not admonished. But yet he also says he didn't speak English and nobody translated for him. How does he know? Judge, it says that the trial court never told me that if I plead guilty to the conviction could affect the immigration status. I understand that's what's been typed in there, but he doesn't even sign under those allegations. He signs on a separate page that just says all the facts contained in the motion is true to the best of my knowledge. He doesn't even affirm to the facts in his own affidavit. And nowhere in his affidavit does he say I am the defendant in this case in Ford County, Mr. Major. In the motion, Judge, it was brought up that it's the same person. In the motion it was, which you don't even assert under oath. Nor do you identify him as the same person when you go to the hearing. No one at any time ever identifies Mr. Major as Mr. Uranga. Nobody. I believe it was done, Judge. Point out to me where in the record you find that. Other than your motion unsworn, where you don't even allege it as a fact. You include it in the heading at the beginning of the motion. You just say, Mr. Major, real name, Uranga. That is true, Judge. That's it. That's what the record says. You don't assert in there as counsel. And I am stating under oath, Mr. Major is in fact the, Mr. Uranga is in fact the Mr. Major found in Ford County case 2008 CF-47. Yes, Judge, you are correct. That is correct. In fact, neither affidavit even references a Ford County case. They're capturing the Circuit Court of Cook County, First Municipal Division. That is correct, Judge. That is correct, Judge. Judge, Your Honors, in regards to the timing, I believe that the C-5 allows us to file the, at any time after the conviction. And, or if you look at within the two years, within the two years of discovery of when he found out about the issues, the case was, the motion was filed. I believe... Let me back up a second, Mr. Kameli. Yes, Your Honor. How did the court get intelligent responses to those questions at the time of the plea if the defendant didn't speak English and Ms. Rowell wasn't translating for him? Judge, there was a translator in the record. She said she was the one there, but she wasn't translating. But in the documents, I believe there was a document provided in the docket that it showed that there was a translator at the time of the plea of guilty. Then she must... Ms. Stefania? She was present... Somebody was there? Yes, Your Honor. She was present in court. That is true. So, but there was a document, I don't believe it's part of the record, that it was, there was a translator at the time of the guilty of plea back in 2008. What's Ms. Rowell's relationship to Mr. Uranga? I believe it's a relative who was present in court. Sister-in-law? Yes, Your Honor. I believe that is the case. So, when the record sheet says defendant's sister-in-law, E. Haracha, translating, that would be Ms. Rowell? That is my understanding that that was the one. Ms. Rowell swears under oath she didn't translate for him. She is not an official translator, Judge. She swears under oath she did not translate for him. She only translated conversations between the defendant and the attorney. I do not know whether this is the same... He did not translate for him, and he doesn't speak English. How did the court get any intelligent responses to its inquiries that would be to the normal part of the process in an entry of a plea of guilty, and then make a finding that the plea was knowing, intelligent, and voluntary? Judge, that if that is the case, that we should be alerted more than the court definitely made a mistake by not having an interpreter, if that is the case, if that is the argument we're about to make. Wait a minute, you didn't allege it. I'm not raising your arguments for you. You didn't make these claims. Judge, the fact that we did make a claim in regards to the plea was not intelligently, so your argument basically makes our argument much stronger, Your Honor, that the court did not have... It all points out that it obviously isn't true. That's all it points out. Counsel, your time is up. You have an opportunity to address this again in rebuttal. Mr. Escalera, on behalf of Eppley, you may make your argument. Good afternoon, Your Honors, and may it please the court, counsel. As we stay in our brief, the first argument that we made was that the defendant forfeited this argument. As Your Honors have mentioned multiple times, none of the specific subsection of the statute is even mentioned during the actual argument. It's not mentioned in their motion. The only time... And it's not even mentioned... Well, they do mention it in their appellate brief, but then they mention it in the reply brief that was indirect. So it just doesn't make any practical sense to raise this argument when you have the actual statute to bring it there. It just... How would I say this? If you have the statute, you basically use it. That's what we're taught. So it's never been mentioned. And then I want to point out, especially at the end, at the record, the trial court was... I'll just basically say what they said. Was the issue the motion has to be within two-year period? Well, as Your Honors already stated, the trial court won't know what the specific section is if it wasn't mentioned by the defendant at all. So because of that, because they didn't bring this specific subsection at all, this court should find that defendant has forfeited this specific subsection on appeal. And then actually to the actual merits of the case, even that they failed to discuss collateral versus direct consequences. This is important because the case that we cite, Viller, this is a Supreme Court case. And then they stated that the failure to admonish a defendant does not call into question the constitutional voluntariness of a guilty plea. And so nowhere in defendant's opening brief discuss this important... Or this distinction between these when a guilty plea is entered to. So they should also forfeit this as well. They did bring it up after the state brung it up in their arguments at below. But other than that, they barely touch onto it. And then they failed to allege actual prejudice according to the statute or under the case law under the Viller. And they repeat their statement twice. So in their opening brief on pages 89, they just basically almost conclusionary that the trial court didn't do this. And then basically because of that, it was a violation of due process. And the same thing in their motion as well. There's no discussion of the requirements of... If there's an inadequate admonishment, that they have to do that. So- Counsel. Yes. One thing, you're not speaking in sentences. And two, you ought to make a judicious use of your time in arguing against what the appellant has alleged. You're bouncing from point to point. And I find it very difficult to understand what you're saying. Okay. I apologize. I... Okay. So let me... I'll repeat basically what I'm saying. So the first issue is we're arguing that the defendant forfeited subsection C5. They never raised this argument at all below. In practical terms, they should have raised it because the statute was there. If they would allegedly used it, they would have been probably able to use it. So that's the first issue. Second issue is that DelVillar explicitly states that the fail to distinguish between direct and collateral consequences does not affect the voluntariness of the... Oh my God. Constitutional voluntariness of a guilty plea. So I understand and I was going to go address counsel's arguments. There's just nothing in there. I wasn't even considering the other issues that this court has raised. I did notice that there was a Cook County, but I just assumed that that was different because he's probably from Chicago. Let me point you to something that I'm just curious why it wouldn't be brought up. How do we know that the person that Mr. Comelli is representing is the person who appeared in Ford County in 2008? They have different names. There's absolutely nothing about whatever they filed or whatever came from Cook County that clears that up. It's never been affirmed that they are the same person as far as I can tell. They have entirely different names. I mean, there's nothing even closely familiar about the names or comparable to the names. Right. I agree. We don't know who translated for sure. And we don't even know if there was translation. What are we supposed to do with that? I would have thought the state might have honed in on that for one thing. Well, the state below didn't do that as well. I simply assumed that they assumed as well because there was no mention about this being the defendant or not being the right correct defendant. I assume that they assumed that was the truth of what they said. That just means that they were appearing pro se. The state below didn't do anything with this issue. That doesn't mean you can't bring it up and say, judges, we don't even know if the person that Mr. Comelli is talking about is the same person that appeared in 2008. Well, from my understanding is if the state fails to bring an argument below, then they forfeit as well. I've had cases where I've seen that happen where the state, if they don't address something, then they fail, they forfeit it. So I don't think necessarily. I'm sorry, I'm from the record that it does not appear that this could be the same person, or it appears in fact, that there's no evidence that this is the same person. I can't imagine that you're precluded from bringing that up. Okay. The other issue about that, John, so is you can't cite something to us on appeal to reverse the trial court, which as I explained to Mr. Comelli, the trial court never heard. But here you're seeking to affirm the trial court. And if it's a matter which is shown on the record, you can make that argument. We can affirm the trial court based on an argument never made if it's established in the record. Okay. Go ahead. And then just going back to what the trial court stated earlier, they were never aware, it's the state's position that they were never aware of this specific subsection of C5. Let me get to that part. It's on page 17, right at the end. It says was the motion has to be within the two-year period. So if the trial court was not aware, if this specific subsection applied, then it couldn't have been, the court could not have used its discretion when it didn't have the knowledge. So that was going back to address Justice DeArmond's and Justice Steigman's comments earlier. I'll go to, and then I'm trying to think of my next point. And then I briefly touched on the collateral and direct consequences. Again, they never addressed that in their opening brief. And so this court should find that defendant has forfeited that as well. It is important to distinguish between the two. And then finally, if there was, as Delavan-Aire states, you had to address actual prejudice or there's got to be the, what's the specific language that they use? Actual prejudice. So prejudice and Delavan-Aire. So those are, defendant in this case just specifically fails at all three types in this case to address anything at all. So with that being said, the court would, or the state would ask this court to affirm. And there's not any questions. I see none. Mr. Kamelec, you may make a rebuttal argument at this time, sir. Let me begin, by the way, by raising the question Justice Steigman raised. What on this record demonstrates, Justice Kamelec, excuse me, what on this record demonstrates that this defendant is the same defendant who fleed guilty in 2008? Judge, besides the part that I brought up in the motion, nothing else, Judge. What point did you bring up in the motion? I brought it up in my motion that Mejia is the same as the person who has the record. That's the first line in the motion that I have filed. You showed up at the driver's license examining station and said you were the same person. Wouldn't you have to demonstrate that that was true? That is true, Judge. But unfortunately, there are no documents to connect those two together. I mean, he didn't have it. It was a fictitious name back in 2008 for a variety of reasons. Many people who are illegal in the country— How about keeping this claim under penalty of perjury in an affidavit? Would he do that? No, Judge. We don't have that. No. No, we don't. You say it was a fictitious name. That's because the police report indicated his driver's license started with the letter M, which would mean he was using the name Mejia. So he applied for, sought, and obtained a driver's license under that name. Judge, at the time, Salvador Mejia was the name that he was using. So that's the only evidence we've got of who that guy is. What do we have that Uranga is the same guy? The Uranga is the same guy, Judge? We don't have anything besides what we have filed, Judge. You state in the first line of your motion, you indicate the defendant's name, then in parenthesis, this Uranga name. Your Honor, none of these issues, none of these were the issues back in the trial court. I'm just that now we are bringing up in the appellate court. But I do understand your points. Well, because anytime we're confronted with the rather unusual circumstance of finding that perhaps the person who is now being brought before a trial court to get a plea withdrawn may not even be the same person, it probably behooves us to point that out. Okay. Thank you, Judge. I understand. You may continue with your argument, Mr. Kibale. I'm sorry, Judge? You may continue with rebuttal argument if you wish. I have no other arguments to make. Please stand. Thank you, counsel. The court will take this matter under advisement, and in due course, we'll issue a decision, and we'll stand in recess in this case.